# United States District Court
# District of Massachusetts

|  |  |  |
|---|---|---|
| AGGREKO, LLC, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **CIVIL ACTION** No. 13-13034-TSH |
| STEPHEN G. KORONIS, UNITED RENTALS, INC., and JOHN DOE, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (Docket No. 3)**
**December 19, 2013**

HILLMAN, D.J.

Aggreko, LLC ("Aggreko") brought claims for breach of contract, breach of the covenant of good faith and fair dealing, violation of the Computer Fraud and Abuse Act, conversion, and breach of fiduciary duty against Defendant Stephen G. Koronis ("Koronis"), a former employee of Aggreko; for tortious interference with contractual and advantageous business relations and unfair and deceptive trade practices against Defendant United Rentals, Inc. ("United"), Koronis' current employer and a competitor of Aggreko, and Defendant John Doe ("Doe") another employee of United whose identity currently is unknown to Plaintiff; for unjust enrichment against Koronis and United; and for misappropriation of trade secrets and civil conspiracy against all Defendants. Aggreko now moves for a preliminary injunction (1) enjoining Defendants from using or disclosing any of Aggreko's confidential proprietary, or trade secret information; (2) requiring Defendants to return to Aggreko all copies and originals of Aggreko's

1

confidential, proprietary, or trade secret information; (3) enjoining Defendants from interfering with Aggreko's relationships with customers about which Koronis obtained confidential information; (4) enjoining Koronis from working for any company that is in competition with Aggreko for two years; (5) requiring Koronis to account for information he removed from Aggreko, return it to Aggreko, identify all transmissions of Aggreko information he made, and certify in writing that all confidential, proprietary, or trade secret information has been returned and all electronic copies of such information has been permanently deleted; (6) permitting Aggreko to select a computer forensic expert to examine all devices capable of storing or transmitting electronic data in Koronis' possession, custody, or control to confirm he is no longer in possession of any Aggreko confidential, proprietary, or trade secret information, to create a list of all transmissions or physical deliveries of any Aggreko information to any recipient, and to examine all devices capable of storing or transmitting electronic data in the possession, custody, or control of any recipient of Aggreko information from Koronis; (7) permitting Aggreko to select a computer forensic expert to examine all devices capable of storing or transmitting electronic data in John Doe's possession, custody, or control (once he is identified) to confirm he is no longer in possession of any Aggreko confidential, proprietary, or trade secret information, to create a list of all transmissions or physical deliveries of any Aggreko information to any recipient, and to examine all devices capable of storing or transmitting electronic data in the possession, custody, or control of any recipient of Aggreko information from John Doe; (8) requiring Koronis to provide Aggreko's counsel with the passcode for the iPhone that was issued to him by Aggreko; (9) requiring Defendants to provide an accounting for any products, plans, services, contracts, or other customer materials that involve or rely on any Aggreko confidential or trade secret information, and for any business obtained by United as a consequence of its

unlawful actions. For the reasons set forth below, Aggreko's motion for preliminary injunction is granted in part and denied in part.

## Facts

The following facts are drawn from the evidence presented at the hearing on Aggreko's motion for preliminary injunction and from the exhibits filed in conjunction with the parties' memoranda in support of and in opposition to this motion.

Aggreko and United are competitor companies in the field of renting industrial equipment to clients in both the public and private sector. Koronis worked for Aggreko as a salesperson for approximately nine years, from September 2004 through November 8, 2013. When he began working at Aggreko in September 2004, Koronis signed an acknowledgment that he read and understood Aggreko's Technology End-User policy. This policy imposes upon employees the obligation to maintain the confidentiality of all of Aggreko's corporate information. In October 2012, Koronis, in consideration of his continued employment with Aggreko, signed a Confidentiality Agreement in which he acknowledged the confidential and proprietary nature of the information to which he would have access as an Aggreko employee and agreed not to use or disclose any such information for his own or another's benefit at any time.

In October 2013, Koronis was informed that his customer base was being reduced from over 400 customers to approximately 21. Koronis received approximately half of his compensation from commissions, and believed this reduction would impact his commission, making him very unhappy. His manager, Russel Porowski, told him the reduction would not affect his commission significantly, but Koronis did not believe this, and decided to determine the impact it would have on him for himself. Around the same time, Koronis also began working on his Territory Sales Plan.

Having determined his customer base reduction would significantly impact his compensation, Koronis approached United about potential employment. After several discussions with Eric Jarvis ("Jarvis"), the Northeast District Manager for United, Koronis received a contingent job offer to work for United as a sales representative on October 28, 2013. The offer stated "United Rentals does not hire people for the purpose of acquiring their former/current employer's trade secrets, intellectual property, or other confidential or proprietary information, and United Rentals does not want access to any materials containing such information." Jarvis also verbally told Koronis not to take anything from Aggreko or email himself anything Aggreko might consider confidential or proprietary. Koronis accepted the offer on October 19, 2013, resigned from Aggreko on November 8, 2013, and began working at United on November 12, 2013. Shortly after he resigned, Koronis told Aggreko's area general manager and area sales manager that he provided United, through United employee Doe, with a business plan describing his requirements for acquiring and servicing clients he had serviced on behalf of Aggreko. The managers believed the business plan contained confidential and proprietary information Koronis had obtained while employed at Aggreko.

Forensic analysis of the laptop issued to Koronis by Aggreko (the "Laptop") shows that Koronis accessed the following information and transferred it to one or more removable storage devices: (1) on October 4, 2013, a spreadsheet containing contact, status, pricing, discounts, bid results, and product information for Aggreko's clients and prospective clients; (2) on October 24, a spreadsheet containing contact information for Aggreko's client and prospective client accounts; (3) on November 7, a spreadsheet containing a list of actual and prospective Aggreko client accounts and Aggreko revenue account files for 2012 and 2013, which included information such as client names, the equipment they used, proposal price information and actual

price information. On October 8, Koronis used the Laptop to access to access Aggreko's Intranet website numerous documents containing confidential information such as Aggreko equipment lists and data on a custom designed device. Koronis also sent the following documents through emails from his company issued email to his personal email: (1) on October 4, a document titled "Northeast Sales Scorecard Sep 13" which including sales and budget information for Aggreko sale employees; (2) on October 9, a spreadsheet called "needs" which listed equipment, price, and date needed; (3) on October 18, a presentation including Aggreko actual and budgeted revenue, profit, and profit margin figures from September 2013; (4) on October 22, a document containing a purchase order for an Aggreko client including the contact information of the client, equipment rented, monthly charges, pricing information, and sales and tax information; (5) on October 24, a document that contained information concerning an Aggreko pricing proposal; and (6) on October 28, a document entitled "Design Brief HS Blower" which included technical and engineering specifications, performance and design criteria, and cost and budget information for Aggreko equipment.

According to Koronis, some these actions were done to prepare his Territory Sales Plan, to determine what impact his customer base reduction would have, and to see how other salespeople were being treated. Regarding the contact information, Koronis maintains he did not think he was doing anything wrong and likens his action to taking keeping business cards one might acquire in the course of one's employment. The "needs" list Koronis prepared for Jarvis told what equipment would be needed for Koronis to pitch the Portsmouth Shipyard client, which solicits bids publically, that he worked with at Aggreko. Koronis says this list was vague and based on his experience and publically available solicitations for bids, not on any

confidential or proprietary Aggreko information. This "needs" list is the only piece of information that the evidence shows United received from Koronis.

United maintains that it did not solicit, receive, or use any Aggreko confidential or proprietary information and agrees that Koronis should return any such information he has. United had a relationship with two of Koronis' biggest clients at Aggreko, Electric Boat and the Portsmouth Navy Yard, well before Koronis began his employment at United. The business of these two clients is won largely through a public bidding process.

## Discussion

Defendants do not object to requiring the return of any Aggreko confidential, proprietary, or trade secret information or a prohibition on using such Aggreko information. Koronis has offered to allow an examination of his electronic devices and the deletion of any Aggreko information. The Defendants do object to the Aggreko's third and fourth requests for injunctive relief, namely that Defendants not interfere with Aggreko's relationships with customers about which Koronis obtained confidential information during his employment with Aggreko and that Koronis not work for any company in the same business as Aggreko for two years. As such, the Court will grant, with some modification, Aggreko's seven other requests for injunctive relief and determine the appropriateness of the two contested requests in the following analysis.

A district court faced with a motion for a preliminary injunction must assess the following four elements: "(1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest."

*Charlesbank Equity Fund II v. Blinds To Go, Inc*., 370 F.3d 151, 162 (1st Cir. 2004).  The party seeking the preliminary injunction bears the "burden of providing a factual basis sufficient to justify a preliminary injunction."  *Aspect Software, Inc. v. Barnett*, 787 F.Supp.2d, 118, 121 (D. Mass. 2011).

*Likelihood of Success*

In support of its motion, Aggreko focuses on its likelihood of success on the breach of contract claim against Koronis, the misappropriation of trade secrets claim against all defendants, and the unfair and deceptive trade practices claim against United and Doe.

Aggreko has not met its burden of showing a likelihood of success against United or Doe. To succeed on a claim of misappropriation of trade secrets, a plaintiff must show (1) the existence of a trade secret; (2) that the plaintiff took reasonable steps to protect the secret; and (3) that the defendant acquired and used, by improper means or through breach of a confidential relationship, the trade secret.  *Blake v. Prof'l Coin Grading Serv*., 898 F. Supp. 2d 365, 393 (D. Mass. 2012).  A trade secret is "any formula, pattern, device or compilation of information which is used in one's business, and which [provides] an opportunity to obtain an advantage over competitors who do not know or use it."[1]  *Burten v. Milton Bradley Co*., 763 F.2d 461, 463 n. 2 (1st Cir. 1985).  The evidence shows that at least some of the information accessed and taken by Koronis constitutes trade secrets, such as the pricing and discount information, equipment needs, and reasons why Aggreko did or did not win a bid for thousands of specific customers.  *See Optos, Inc. v. Topcon Medical Systems, Inc*., 777 F.Supp.2d 217, 239 (finding a customer list that

---

[1] Aggreko frequently refers to "confidential" information, "proprietary" information, and trade secrets, often using all three terms or using them interchangeably. Massachusetts law has not clearly defined whether "trade secrets" is synonymous with confidential or proprietary information.  Take it Away, Inc. v. The Home Depot, Inc., 2009 WL 458552, *7 (D. Mass. 2009); *see Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 210 F.3d 1, 8 (1st Cir.2000) (expressing "some doubt about whether and how the Massachusetts courts differentiate among confidential information, proprietary information, and trade secrets"). This Court need not reach this issue, as the information found here to be confidential and proprietary also constitutes trade secrets.

gave information about the needs of customers conferred a significant competitive advantage and constituted a trade secret). Aggreko keep this information password protected, only giving access to select employees.

However, Aggreko has not yet met its burden of showing it is likely that United or Doe acquired or used any of this information. The only document Aggreko can show United or Doe received Aggreko did not show likely contained trade secrets. Aggreko's unfair and deceptive trade practices claim rests on the premise that United received Aggreko confidential or proprietary information or Aggreko trade secrets, which again, Aggreko has not shown. Therefore Aggreko has not met its burden of showing a likelihood of success against United or Doe.

Similarly, Aggreko has failed to show Koronis actually used any of the information he took with him, and as Koronis has agreed to return any Aggreko information he might have and allow inspection of his devices, Aggreko is unlikely to prove use in the future. Unsupported speculation that Koronis has or might use the information is not enough to show a likelihood of success. *See EchoMail, Inc. v. Am. Exp. Co.,* 378 F. Supp. 2d 1, 3 (D. Mass. 2005) ("The third prong requires a showing that [the Defendant] actually used the trade secret information.). This is an essentially component of proving misappropriation of trade secrets, therefore Aggreko has not shown it is likely to succeed on that claim.

Aggreko has shown it is likely to succeed in its claim against Koronis in its breach of contract claim. Koronis does not dispute that he signed a valid confidentiality agreement. Rather, he argues he did not take any confidential information. As stated above, this Court finds that several pieces of information Aggreko has shown were accessed and taken by Mr. Koronis constitute confidential information which Aggreko took steps to protect. This includes customer

lists with pricing, discount, equipment, and bid results information, all of which is not known to the public, and is defined as confidential information in the agreement Koronis signed. Koronis pledged in this agreement to use his "best efforts and utmost diligence to protect and keep the trade secrets and confidential and proprietary business information of the Company," and not to use of disclose that information for his or another's benefit. Aggreko has shown that Koronis, knowing his resignation from Aggreko was imminent, obtaining several pieces of confidential Aggreko information. It is likely such acts will be found to be a breach of his contract with Aggreko.

*Irreparable Harm*

"When a plaintiff demonstrates likelihood of success on a misappropriation of trade secrets claim, it need not prove irreparable injury because such harm is presumed." *EchoMail*, 378 F. Supp. 2d at 4. Where a plaintiff has not shown a likelihood of success on the merits, irreparable injury will not be presumed. *Id*. Here Aggreko has not shown a likelihood of success on any of the claims of misappropriation of trade secrets, so no irreparable harm will be presumed. Aggreko has failed to demonstrate that any harm has occurred thus far and that any irreparable harm is likely in the future. While it is true Aggreko could suffer serious irreparable harm if Defendants did have possession of Aggreko's confidential or proprietary information or trade secrets, this Court is issuing an order requiring Defendants to return any Aggreko information that is confidential, proprietary, or that constitutes a trade secret, enjoining Defendants from using or disseminating such information, requiring Koronis to account for all of the information he removed from Aggreko and certify that any copies have been destroyed, and allowing a number of discovery requests that will permit Aggreko to ensure United has none of its confidential or proprietary information or trade secrets. Given all of this relief, this Court sees

no danger of irreparable harm, and Aggreko has not shown a risk of any, if Koronis is permitted to work for an Aggreko competitor and United is permitted to continue to compete with Aggreko for the same clients.

*Balance of Harms*

As explained above, there is no indication Aggreko will be harmed if its third and fourth request for injunctive relief are denied, given the slew of injunctive relief this Court is ordering. Defendants, on the other hand, will likely suffer substantial harm if that relief is granted. Koronis will not be able to work in the field he has specialized in for many years, jeopardizing his employment. *See Safety-Kleen Sys., Inc. v. McGinn*, 233 F. Supp. 2d 121, 124 (D. Mass. 2002) ("the balance of hardships would favor an individual defendant… whose livelihood would be seriously and adversely disrupted."). United will be prohibited from continuing its business relationship with clients it has developed such a relationship with for years, causing United to lose business temporarily and possibly permanently. The balance of harms clearly weighs against granting Aggreko its third and fourth requested relief.

*Public Interest*

The public interest favors protecting valid agreements and legitimate business interests, which supports requiring Defendants to return and ensuring Defendants have none of Aggreko's confidential business information. However, the public interest does not favor restraining lawful competition where steps are taken to ensure such competition is lawful, weighing against restraining Koronis' employment and United's client base.

**Conclusion**

Balancing the four factors required for the issuance of a preliminary injunction, the Court finds that the Plaintiff is entitled to some, but not all, of the preliminary injunctive relief

10

requested and Plaintiff's Motion for Preliminary Order (Docket No. 3) is therefore **granted** in part and **denied** in part in accordance with the following order.

**IT IS ORDERED THAT**:

1. Defendants shall be and hereby are enjoined from disclosing, using, or providing to any other person or entity any of Aggreko's confidential, proprietary, or trade secret information;

2. Defendants shall be and hereby are required to return immediately to Aggreko all originals and all copies, electronic or otherwise, of all Aggreko's confidential, proprietary, or trade secret information in their possession, custody, or control;

3. Koronis shall be and hereby is required immediately (i) to account for the information and documents that he sent from his Aggreko e-mail account to his personal e-mail account, and that he otherwise removed from Aggreko, (ii) to return all originals and all copies of any confidential, proprietary, or trade secret information of Aggreko that is in his possession, custody, or control, (iii) to identify all electronic transmissions or physical deliveries of any Aggreko information and documents that he may have made to any recipient either before or after the termination of his employment with Aggreko, and (iv) to certify in writing and under the pains and penalties of perjury, after returning the information described above to Aggreko, that all paper copies of any Aggreko confidential, proprietary, or trade secret information in his possession, custody, or control have been returned to Aggreko, and that all electronic copies of any such information have been permanently deleted from his email account or any other location where they have been or are currently stored;

4. Aggreko shall be and hereby is permitted to select a computer forensic expert (i) to have access to and examine (the cost of which will be split by Aggreko and Koronis) any and all computers, flash drives, smartphones, printers, cell phones, and other devices capable of storing or transmitting electronic data in Koronis's possession, custody, or control, including such devices issued to him for his use by United, to confirm that Koronis is no longer in possession of any Aggreko confidential, proprietary, or trade secret information, (ii) to create a list of all electronic transmissions or physical deliveries of any Aggreko information and documents that Koronis made to any recipient ("Recipients") either before or after the termination of his employment with Aggreko, and (iii) to have access to and examine (the cost of which will be split by Aggreko and Koronis) any and all computers, flash drives, smartphones, printers, cell phones, and other devices capable of storing or transmitting electronic data in the possession, custody, or control of all Recipients, including any such devices issued to each Recipient for his or her use by United;

5. Aggreko shall be and hereby is permitted, once Doe has been identified, to select a computer forensic expert (i) to have access to and examine (the cost of which will be split by Aggreko and Doe) any and all computers, flash drives, smartphones, printers, cell phones, and other devices capable of storing or transmitting electronic data in Doe's possession, custody, or control, including such devices issued to him for his use by United, to confirm that Doe is no longer in possession of any Aggreko confidential, proprietary, or trade secret information, (ii) to create a list of all electronic transmissions or physical deliveries of any Aggreko information and documents that Doe made to any recipient ("Recipients"), and (iii) to have access to and examine (the cost of which will be split by Aggreko and Doe) any and all computers, flash drives, smartphones, printers, cell phones, and other devices capable

of storing or transmitting electronic data in the possession, custody, or control of all Recipients, including any such devices issued to each Recipient for his or her use by United;

6. Koronis shall be and hereby is required to provide to Aggreko's counsel the passcode for the iPhone that was issued to him by Aggreko for his use while employed by Aggreko; and

7. Defendants shall be and hereby are required to provide an accounting for any products, plans, services, contracts, or other customer materials that involve or rely on any Aggreko confidential or trade secret information, and for any business obtained by United as a consequence of its obtaining any Aggreko confidential or trade secret information.

**IT IS FURTHER ORDERED THAT**: Aggreko must post a bond in the amount of $10,000 as security for the costs and damages, if any, sustained by any defendant found to be wrongfully enjoined or restrained.

**SO ORDERED**.

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**UNITED STATES DISTRICT JUDGE**